IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC DEIGERT,      *

    Plaintiff,      *

                                Civil No. RDB -09-00392

v.      *

BRIAN BAKER, et al.,      *

    Defendants.      *

                               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Eric Deigert initiated this action in the United States District Court for the District of Maryland on February 18, 2009, seeking the removal of Brian Baker as personal representative of the estates of Eric Deigert's mother, Ingeborg Deigert, and father, Joseph Deigert; declaratory judgment nullifying the sale of property in Harford County, Md., from the estate of Joseph Deigert to the estate of Ingeborg Deigert; and, *inter alia*, injunctive relief regarding the sale of the Harford County property. Plaintiff contended that this Court had jurisdiction pursuant to 28 U.S.C. § 1332, which provides for diversity jurisdiction. Plaintiff stated in his Complaint that he was a resident of Florida. Defendants were residents of Maryland.

After Defendants sought dismissal of the case on the grounds that the Plaintiff was not a resident of Florida, and provided evidence indicating that Plaintiff had not established residency in Florida (Paper No. 6), Plaintiff sought to amend his Complaint to state his residency as the District of Columbia. This Court granted the amendment on June 11, 2009. (Paper No. 9.) On February 19, 2010, the Plaintiff appeared in D.C. Superior Court for sentencing on firearms charges, where the Plaintiff repeatedly told the court that he did not live in the District of

Columbia. Defendants in the instant case then renewed their Motion to Dismiss for Lack of Jurisdiction (Paper No. 47). In Plaintiff's response, he did not oppose the motion to dismiss (Paper No. 48). This Court dismissed the case without prejudice on April 12, 2010.

Defendants now seek, in an Amended Motion for Sanctions and supplements to it (Paper Nos. 50, 56, 68), for Plaintiff to pay their attorneys' fees in the amount of $166,231.28 – of which $68,358.81 was incurred by Defendant Brian Baker and $97,872.47 was incurred by co-defendants Carl Ray Mann and Brian Lutters. The parties' submissions have been reviewed, and an initial hearing was held on July 29, 2010, at which time for the reasons stated on the record, this Court indicated it would impose sanctions but withheld a ruling on the amount of attorneys' fees. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendants' pending motion will be GRANTED, but the monetary amount will be slightly reduced. In the accompanying Order, this Court will award attorneys' fees and costs in the amount of $66,933.81 to Brian Baker and $95,982.47 to Carl Ray Mann and Brian Lutters, for a total award of $162,916.28.

**I.     Attorney's Fees May be Assessed Under the Court's Inherent Powers**

The United States Supreme Court has recognized that courts have inherent powers that allow them to impose sanctions when a fraud has been practiced upon the court. In *Roadway Express v. Piper*, 447 U.S. 752, 765 (1980), the Supreme Court reaffirmed the "well-acknowledged inherent power of a court to levy sanctions in response to abusive litigation practices" and noted those sanctions included assessing attorney's fees. In *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991), the Court stated that "an assessment of attorney's fees is undoubtedly within a court's inherent power."

The Plaintiff, in opposing Defendants' Motion for Sanctions, points out that Defendants originally sought an award of attorney's fees under Rule 11 of the Federal Rules of Civil Procedure. Rule 11(c)(1) allows a court to impose an appropriate sanction on an attorney, law firm, or party for violating the Rule 11(b) requirement that representations to the court are being presented for proper reasons, are warranted by existing law (or by a nonfrivolous argument for changing existing law), and have evidentiary support for the factual contentions therein. *Fed. R. Civ. P. 11*. Rule 11 includes a so-called "safe harbor" provision that allows the allegedly offending party to correct the challenged matter within 21 days, thus avoiding sanctions. *Id. 11(c)(2)*. Plaintiffs note they were not given the 21-day safe harbor in the instant case.

However, Rule 11 is not the only vehicle for sanctions available to a court. The Supreme Court made it clear in *Chambers*, *supra* at 49, that nothing in the Federal Rules of Civil Procedure supplants a court's inherent powers. "The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* Simply because bad-faith conduct can be sanctioned under a statute or under the Rules does not preclude a court from sanctioning by means of its inherent powers. *Id.* at 50. The Notes of the Advisory Committee on 1993 amendments to the Rules states as much: "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927." *Fed. R. Civ. P. 11 (Notes of Advisory Committee on 1993 amendments to Rules, Subdivision (d))*.

The so-called American Rule of litigation holds that each party in a lawsuit pays its own attorney's fees. However, the Supreme Court has identified three exceptions in which a court, under its inherent powers, may impose attorney's fees: (1) the "common fund exception," which allows the awarding of fees to a party whose litigation efforts directly benefit others; (2) as a sanction for the willful disobedience of a court order; and (3) when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, *supra* at 45-46. "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id*. at 46 (internal citations and quotation marks omitted).

## II.     The Plaintiff Acted in Bad Faith

This Court in the instant case assesses fees under the third exception outlined by the Supreme Court in *Chambers*, finding that Plaintiff Eric Deigert acted in bad faith in his representations to this Court regarding his residence. In his Complaint, Deigert asserted that this Court had jurisdiction based on diversity of citizenship. (Paper No. 1.) All of the Defendants reside in Maryland. According to the Complaint, "The Plaintiff is a resident of Florida." *Id.* The Plaintiff listed his address as "17170 Harbor Pointe Drive, Fort Meyers [sic], Florida 33908." *Id*. The Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 4), noting that the condominium at 17170 Harbor Pointe Drive is in fact owned by the Joseph D. Deigert Marital Trust, the trust of the Plaintiff's father, of which the three co-defendants are trustees. The Defendants stated that Plaintiff did not have permission to enter the condominium and that, in fact, they had changed the locks to keep him out. Defendants

submitted a warranty deed showing the transfer of the condominium to the Defendants in their capacity as co-trustees of the Joseph D. Deigert Marital Trust, on April 11, 2005.

In response, the Plaintiff asserted that he maintains two residences – the Florida condominium and an apartment in Washington D.C., at 425 8th St. NW. (Paper No. 5.) The Plaintiff stated that he files his federal tax returns from Florida and that, although he is not registered to vote, he surrendered his Maryland driver's license when he obtained his Florida license. *Id.* The Plaintiff did not state when he obtained his Florida license. The Plaintiff further stated that his car was registered in Maryland for a two-year period ending in August 2009 but that he intended to register his car in Florida when the Maryland registration expired. *Id.*

It is now quite clear to the Court that many of the Plaintiff's statements were false, as demonstrated by the documents submitted by the Defendants. (Exhibits to Paper No. 6.) Plaintiff stated that he files federal tax returns from Florida. However, an Internal Revenue Service document dated June 18, 2008, lists Plaintiff's address as P.O. Box 7, Fallston, Md., 21047. (Paper No. 6, Exhibit 4.) Plaintiff stated that he was not registered to vote. However, the Elections Supervisor for Harford County, Md., stated that records showed the Plaintiff was registered to vote in Harford County and had, in fact, voted in 2000 and 2004. (*Id.*, Exhibit 6.) Plaintiff stated that he surrendered his Maryland driver's license when he obtained his Florida license. However, during a traffic stop on March 12, 2006, in Sarasota County, Florida, Plaintiff presented the Florida patrol officer with a Maryland driver's license. (*Id.*, Exhibit 2.)

The officer checked on the license and determined that it was restricted, had been suspended several times, and revoked once. *Id.* Further, the officer learned that Plaintiff *also* had a Florida driver's license, with no restrictions on it, and that when Plaintiff applied for his

Florida license, he stated that his driving privileges had never been suspended or revoked. *Id.* Plaintiff was charged with unauthorized possession of a Florida driver's license and driving an unregistered motor vehicle. *Id.* The arrest report listed Plaintiff's address as the condominium in Fort Myers, Florida. However, on a Certificate of Address document filled out and signed by the Plaintiff, he listed his address as P.O. Box 7, Fallston, MD. 21047. *Id.* Plaintiff's correspondence with the Sarasota County Circuit Court indicates he was faxing documents from 410-893-7925, the number of a fax machine in the Harford County, Md., home at the center of this dispute. (*Id.*, Exhibit 3.) Finally, attempts by the Sarasota County Sheriff's Office to deliver a summons to Plaintiff at the Fort Myers condominium were repeatedly unsuccessful. *Id.*

Plaintiff did not dispute or attempt to clear up the discrepancies regarding his residence. Rather, by oral motion, he requested to amend his Complaint to change his address to 425 8th St. NW, Apt. 338, Washington, D.C. This Court, on June 11, 2009, granted that motion. (Paper No. 9.) Based on Plaintiff's representations in affidavits regarding his residence in Washington, this Court was satisfied that diversity of citizenship between the parties had been established, and litigation proceeded.

However, while litigation proceeded in the instant case, Plaintiff appeared in Superior Court of the District of Columbia on December 2, 2009, and pled guilty to one count of possession of an unregistered firearm and one count of unlawful possession of ammunition. At sentencing on February 19, 2010, before the Honorable Frederick H. Weisberg, Plaintiff repeatedly maintained that he did *not* live in Washington, D.C. "Your Honor, I don't live at that address," the Plaintiff said, referring to 425 8th St. NW in Washington. (Paper No. 47, Exhibit 3, Tr. of District of Columbia v. Eric Deigert, No. CTF-5409-09, at 5.) "That's not my address or residence," Plaintiff told the court. *Id.* at 6. "I do not reside at that apartment." *Id.* The judge

6

himself expressed confusion and frustration at trying to determine where Mr. Deigert actually lived, whether it was Florida, Maryland, or the District of Columbia. *Id.* at 9. "It's just there's something that's not ringing true to me. I just don't get it," the judge said. *Id.* Mr. Deigert told the judge he would be willing to "move in" to the D.C. apartment to satisfy probation on the firearms violation. *Id*. at 13.

The Defendants in the instant case, upon learning of the proceedings in D.C. Superior Court, renewed their Motion to Dismiss for Lack of Personal Jurisdiction. (Paper No. 47.) Plaintiff did not oppose dismissal of the case. (Paper No. 48.) Accordingly, this Court, on April 12, 2010, dismissed the case without prejudice. (Paper No. 49.) Plaintiff's actual residence was never determined in the course of the present litigation or, for that matter, during the litigation in D.C. Superior Court.

### III. Award of Attorney's Fees

Defendants seek an award of attorney's fees, arguing that the case would never have reached this Court if not for Plaintiff's "numerous and repeated false allegations regarding his residency" – misrepresentations that led to "a tremendous amount of work being done by the parties, their counsel and the Court." (Paper No. 56, Defendants' Amended Motion for Sanctions.) This Court agrees that, with some minor reductions, attorneys' fees should be awarded to Defendants as a sanction against Plaintiff for his bad faith actions in repeatedly misrepresenting his residence to this Court in an attempt to gain diversity jurisdiction. The misrepresentations were not accidental mistakes but deliberate and intentional, evincing bad faith and a lack of respect for the processes of this Court.

This Court has explained the calculation of a reasonable fee award, known as the lodestar award, as follows:

> A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate. In assessing the reasonableness of the hours and rate claimed, the court considers the following twelve factors elucidated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 n.28 (4th Cir.1978): "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001) (quoting *EEOC v. Service News Co*., 898 F.2d 958, 965 (4th Cir. 1990) and citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The twelve-factor test is subsumed in the initial calculation of the lodestar award. *Hensley*, 461 U.S. at 434 n.9. "'When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is

presumed to be the reasonable fee' to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal citations omitted).

In examining the twelve factors, this Court finds the lodestar award of $68,358.81 in attorney's fees to Defendant Brian Baker and $97,852.47 in attorney's fees to Carl Ray Mann and Brian Lutters to be reasonable.[1] The case involved a dispute over the estates of two parents, a disagreement among estranged brothers (Eric Deigert and Kurt Deigert, who joined as a Defendant), and considerable research by the attorneys regarding court proceedings in Florida and the District of Columbia that called into question Plaintiff's purported residence. The defense attorneys have submitted their fees in accordance with the Local Rules of this Court. Given the complexity of the case and the size of the estate involved, this Court finds the fees submitted by the defense attorneys to be reasonable in accordance with the twelve factors.

However, this Court will make two downward adjustments to the lodestar award. First, this Court will deduct the fees for attorney work on a related but tangential matter in Orphans' Court regarding the Harford County property at issue, a deduction suggested by Plaintiff in his Memorandum in Opposition to Defendants' Amended Motion for Sanctions. (Paper No. 60.) The Orphans' Court case would have proceeded regardless of the outcome in this case, or even if this case had never been filed. Therefore, $1,425 will be deducted from the attorney's fees of Donald Proctor and Margaret McKee, resulting in an award of $66,933.81 in attorney's fees for their defense of Brian Baker. For the same reason, $270 will be deducted from the fees awarded to David Carey and Stephen Nolan, who represented Defendants Carl Ray Mann and Brian Lutters. Second, this Court will deduct $1,600 from David Carey's and Stephen Nolan's fees – the amount charged for the expert witness expenses of Stewart H. Getz. Mr. Getz, an attorney

---

[1] The Defendants claim a lodestar award of $97,872.47 for Carl Ray Mann and Brian Lutters. However, this Court's own accounting of the fees and expenses arrives at a lodestar figure of $97,852.47 – or $20 less than Defendant's claim. The Court will assume a typo on the part of Defendants and proceed with its own figure.

based in Bel Air, Md., served as counsel to all Defendants in this matter, making it clear, as the Plaintiff suggests, that Mr. Getz is an advocate here and not an expert witness. Further, Mr. Getz's resume states that he has provided no expert testimony within the last four years. (Paper No. 61, Exhibit 1.) Accordingly, Mr. Getz's expert witness fee will be deducted from the award. That deduction, along with the $270 deducted in fees related to the Orphans' Court matter, results in an award of $95,982.47 for Defendants Carl Ray Mann and Brian Lutters.

The following chart summarizes the attorneys' fees awards:

**Attorney's fees for Defendant Brian Baker, with deductions:**

| Attorney | Hours | Fees |
| --- | --- | --- |
| Donald Proctor | 53 | $18,550 |
| | | *($210) Orphans' Court deduction* |
| Margaret McKee | 163.85 | $49,155 |
| | | *($1,215) Orphans' Court deduction* |
| Costs | | $653.81 |
| **Total** | | **$66,933.81** |

**Attorney's fees for Defendants Carl Ray Mann and Brian Lutters, with deductions:**

| Attorney | Hours | Fees |
| --- | --- | --- |
| David Carey | 85.6 | $21,400 |
| A.J.A. Young | 68.5 | $18,837.50 |
| M. Alegi | 4.5 | $787.50 |

| | | |
|---|---|---|
| Stephen Nolan | 105.9 | $31,860 |
| | | *($270) Orphans' Court deduction* |
| Erin Murphy | 2 | $400 |
| Nolan paralegal | 27.6 | $2,760 |
| Costs | | $21,807.47 |
| | | *($1,600) Expert witness fee of S. Getz* |
| **Total** | | **$95,982.47** |

**TOTAL AWARD OF ATTORNEYS' FEES**          **$162,916.28**

## CONCLUSION

Therefore, the subject Motions for Sanctions (Paper Nos. 50, 56, and 68) are GRANTED with a slight deduction as reflected in the chart on the preceding page. This Court, acting under its inherent powers, imposes sanctions on Plaintiff Eric Deigert in the form of attorneys' fees in the amount of $66,933.81 to the law firm of Proctor & McKee, P.A., and $95,982.47 to the law firms of Brown, Brown and Young, P.A., and Stephen J. Nolan — for a total award of $162,916.28. This award is based upon this Court's finding of the Plaintiff's bad faith in his representations to the Court. An accompanying Order follows.

Dated: Sept. 30, 2010          /s/_____
                                                         Richard D. Bennett
                                                         United States District Judge